# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| VINCE O. WARREN,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)  CAUSE NO.: 2:15-CV-250-PRC<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Vince O. Warren on July 2, 2015, and a Brief in Support of Plaintiff's Motion for Summary Judgment [DE 13], filed by Plaintiff on November 2, 2015. Plaintiff requests that the February 7, 2014 decision of the Administrative Law Judge denying his claim for supplemental security income be reversed and remanded for further proceedings. On February 5, 2016, the Commissioner filed a response, and Plaintiff filed a reply on February 24, 2016. For the following reasons, the Court grants Plaintiff's request for remand.

## BACKGROUND

Plaintiff filed for supplemental security income on November 13, 2012. His claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on January 27, 2014, and presided over by Administrative Law Judge (ALJ) Christa Zamora. Present at the hearing were Plaintiff, his attorney, and an impartial vocational expert.

The ALJ issued a written decision on February 7, 2014, concluding that Plaintiff was not disabled based on the following findings:

   1.    The claimant has not engaged in substantial gainful activity since November 13, 2012, the application date.

2. The claimant has the following severe impairment[s]: degenerative joint disease of the lumbar spine, degenerative joint disease of the pelvis/right hip, and chronic pain syndrome.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with some additional limitations. More specifically, he is able to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. He is further limited to no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing.

5. The claimant has no past relevant work.

6. The claimant was born [in 1988] and was 23 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 13, 2012, the date the application was filed.

(AR 1-23). Plaintiff then sought review before the Agency's Appeals Council, which denied his request on May 18, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On July 2, 2015, Plaintiff filed this civil action pursuant to 42 U.S.C. § 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. This Court thus has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.

2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from

4

engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal of the ALJ's decision and remand for further proceedings. In support of the requested relief, Plaintiff argues that (1) the ALJ erred in evaluating Plaintiff's subjective symptoms, (2) the ALJ made errors regarding Plaintiff's mental impairments, and (3) the ALJ's determination of Plaintiff's RFC does not account for Plaintiff's pain and related limitations and is not supported by substantial evidence.

### A. Evaluation of Subjective Symptoms

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

See 20 C.F.R. § 416.929(c)(3).

Earlier this year, the Social Security Administration issued Social Security Ruling ("SSR") 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Though the new Ruling was issued after the ALJ's decision in this matter,

the new Ruling is a clarification of the law and not a change in the law, so use of the new Ruling on appeal is appropriate. *Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016) (citing *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)).

As an initial matter, Plaintiff finds fault with the ALJ's use of boilerplate language. The Seventh Circuit Court of Appeals has often criticized the language at issue. *See, e.g.*, *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015). But an ALJ's use of the boilerplate language does not amount to reversible error if she otherwise provides sufficient justification for her determination. *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013). Accordingly, the Court proceeds to consideration of the substance of the ALJ's analysis.

Plaintiff argues that the ALJ's evaluation of Plaintiff's symptoms is patently wrong because she made improper inferences based on Plaintiff's activities of daily living. The ALJ found that Plaintiff's impairments are not as severe as he alleges and provided three reasons for this finding: (1) Plaintiff is able to perform many activities of daily living, (2) Plaintiff's assertion regarding his ability to drive is inconsistent with the evidence of record, and (3) no treating or examining physician found Plaintiff to be limited to a greater extent than the RFC determined by the ALJ. Plaintiff takes issue with each reason, and the Court will address each argument in turn.

The ALJ found that Plaintiff is capable of "doing household cleaning, washing dishes, independently maintaining his personal hygiene, taking college classes, swimming and exercising, going to church, driving, and playing board games." (AR 21). In looking at the evidence the ALJ cites in support of Plaintiff's ability—that is, Exhibits 4E, 7E, 6F, and Plaintiff's hearing testimony—a different picture emerges.

7

Exhibit 4E is Plaintiff's December 15, 2012 function report. Plaintiff reports that he receives rides to school (which he attends part time) and therapy; alternates between standing and sitting during his classes; performs personal hygiene tasks in ways that match his abilities, such as using an electric razor because it is quicker and requires less time spent standing than a non-electric razor; cleans his own room for ten minutes twice a month but needs help with the windows, bed sheets, dusting, and vacuuming; drives "only very short distances" due to the pain of pushing the pedals; and indicates that sitting for a quick board game is difficult. (AR 216-23).

Exhibit 7E is Plaintiff's March 3, 2013 function report. Plaintiff again reports receiving rides to school and therapy. (AR 237). Plaintiff also indicates that his condition has worsened since he filled out the previous function report. (AR 244). Plaintiff reports that he plays board games lying down, that he is no longer able to do house work, and that, due to surgery, he will not be driving. (AR 239-41).

Exhibit 6F is the January 18, 2013 consultative examination report from Dr. J. Smejkal. This report notes that Plaintiff complains of inability to drive and to do all daily living activities unassisted. Dr. Smejkal gives no opinion regarding Plaintiff's ability to do the activities the ALJ listed.

At the January 27, 2014 hearing, Plaintiff testified as follows. Plaintiff was enrolled in nine credits of college classes at that time, all of which were online. (AR 46). He usually takes two or three breaks in order to complete the daily work for one class, and when he was taking in-person classes, he would normally leave about fifteen minutes early. (AR 55). Plaintiff said he is able to clean his room, that he does dishes "from time to time," and that he can drive two to four miles. (AR

49). He swims and performs other exercises given to him by a doctor for therapeutic reasons. (AR 52-3). He cannot swim strokes that are one arm at a time because of the torque. (AR 54).

The evidence the ALJ cites does not support her evaluation that Plaintiff's subjective symptoms are not as severe as alleged. Though the evidence indicates that, at times, Plaintiff could do the activities that the ALJ listed, the evidence places several qualifications and limitations on Plaintiff's abilities to perform these activities. The ALJ has failed to build a logical bridge from the evidence to her conclusion. *See Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (finding the ALJ's reliance on the plaintiff's daily activities to support the decision was undermined by the evidence, which showed that the plaintiff's activities were limited and mostly sedentary). Further, the ALJ is not permitted to cherry-pick from the evidence and select only those facts which support her conclusion. *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014) (holding that the ALJ's "apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal").

Further, Plaintiff swims and exercises as a part of his physical therapy. Physical activities undertaken as a form of therapy, such as walking and swimming should not be used to show that a Plaintiff can work. *See Scrogham*, 765 F.3d at 701 (citing *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) (holding that walking two miles for therapeutic reasons could not support conclusion that the plaintiff could work); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (holding that walking and swimming for rehabilitative purposes were "not necessarily transferable to the work setting with regard to the impact of pain")).

Next, the ALJ determined that Plaintiff's alleged ability to sit for only ten to fifteen minutes was undercut by evidence that he regularly drives for 40 minutes at a time and flies to Baton Rouge,

9

Louisiana, for treatment. The Commissioner does not address Plaintiff's argument that the ALJ erred in making this determination. The only evidence the ALJ cites in this portion of the opinion is evidence of Plaintiff making assertions of his inabilities (Exhibit 6F, discussed above) and Plaintiff's hearing testimony. The ALJ mischaracterizes Plaintiff's hearing testimony. Plaintiff testified that his college was about 40 minutes away from his home, (AR 49), but the Court has found no testimony indicating that he ever drove to college. The ALJ also noted that Plaintiff's travel to Baton Rouge for treatment "necessarily implies that he was able to remain seated for a significant portion of that flight." There is no evidence cited to support this assertion. Instead of making assumptions about the amount of time Plaintiff spends sitting or Plaintiff's pain level during the flights, the ALJ should have asked Plaintiff about these matters at the hearing. It is possible that Plaintiff was able to shift positions frequently during his flights or that he was willing to endure a very painful flight in order to undergo experimental treatment at the Bone & Joint Clinic in Baton Rouge because locally available treatments have been unsuccessful. *See* SSR 16-3p, 2016 WL 1119029, at *8 ("Persistent attempts to obtain relief of symptoms, such as . . . trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."). By mischaracterizing the evidence of Plaintiff's trips to college and failing to inquire into Plaintiff's flights, the ALJ has not built a logical bridge from this evidence to her conclusion.

Plaintiff also argues that the ALJ should not have considered the lack of restrictions imposed by treating physicians on Plaintiff's activities. In support, Plaintiff asserts that, because his activities were "far less than even sedentary," it is not surprising that his physicians did not further limit his activities and the lack of restriction should not weigh against finding that his subjective symptoms

are as severe as alleged. The Commissioner counters that an ALJ is entitled to consider medical opinions on a claimant's ability to work. *See* SSR 16-3p, 2016 WL 1119029, at *6. However, the absence of a medical opinion that Plaintiff's activities should be restricted is not equivalent to the presence of a medical opinion that Plaintiff's activities should not be restricted. Nonetheless, the Court need not resolve this issue in this case. Even if the ALJ's consideration of the lack of medical opinions is appropriate, the ALJ's errors in connecting the evidence to her conclusions, discussed above, undermine the ALJ's evaluation of Plaintiff's subjective symptoms and require remand.

### B. Mental Impairments

Plaintiff argues that the ALJ erred by not following the "special technique" for evaluating mental impairments. The special technique, set forth in 20 C.F.R. § 416.920a, is used at steps two and three of the evaluation process to determine whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations. *Craft*, 539 F.3d at 674; SSR 96-8p, 1996 WL 374184 (July 2, 1996). First, the ALJ determines whether a claimant has a medically determinable mental impairment(s) by evaluating the claimant's "pertinent symptoms, signs, and laboratory findings." 20 C.F.R. § 416.920a(b)(1). The ALJ must document that finding of a medically determinable mental impairment and rate the degree of limitation in four broad "functional areas" known as the "B criteria": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Pepper*, 712 F.3d at 365 (citing § 404.1520a(c)(3); *Craft,* 539 F.3d at 674). Each assigned rating corresponds with a determination of the severity of the mental impairment. *Id*. (citing 20 C.F.R. § 404.1520a(d)(1)). The ALJ must document use of the technique, incorporating the relevant findings and conclusions into the written decision. *Id.* (citing 20 C.F.R. § 404.1520a(e)(4)). The ALJ must refer to significant medical

11

evidence and the functional limitations she considered in reaching her conclusions about the severity of the mental impairments. *Craft*, 539 F.3d at 675. The Seventh Circuit Court of Appeals has held that, "[u]nder some circumstances, the failure to explicitly use the special technique may . . . be harmless error." *Id.* But, this is true only when the ALJ provides "enough information to support the 'not severe' finding," and those reasons are supported by medical evidence. *See Pepper,* 712 F.3d at 366 (internal quotation omitted).

Here, the ALJ concluded that Plaintiff "has described no significant difficulty performing typical daily activities, functioning socially, or maintaining concentration and focus to perform various mentally challenging tasks such as attending college classes and driving." (AR 16). The ALJ proceeded to find that Plaintiff's adjustment disorder and ADHD are nonsevere impairments, noting that the state agency psychological consultants also found the mental impairments to be nonsevere. Though the ALJ referenced three of the four functional areas, she did not rate the degree of limitation for these areas, noting only that Plaintiff "has described no significant difficulty" in these areas. This is not the "special technique" set forth in the regulations, and reporting Plaintiff's description of his abilities is not the same as rating the degree of limitation. Furthermore, "no significant difficulty" is not one of the degrees of limitation set forth in the regulations. *See* 20 C.F.R. § 404.1520a(c)(4) ("When we rate the degree of limitation in the first three functional areas . . . , we will use the following five-point scale: None, mild, moderate, marked, and extreme."). "No significant difficulty" is logically consistent with findings of either no limitations or mild limitations. When the ALJ found the impairments nonsevere, she cited the psychological consultants' finding of the same, but the ALJ did not note that the psychological consultants found that Plaintiff has mild limitations in activities of daily living and in concentration, persistence, and pace. The ALJ has not

made clear whether she agrees with the psychological consultants and finds that Plaintiff has these mild limitations. The ALJ failed to use the special technique, the Court is unable to discern from the opinion what the ALJ's findings regarding these limitations are, and the Court cannot follow the ALJ's reasoning. Remand is required.

The Commissioner is correct that mild or even moderate limitations do not necessarily prevent an individual from functioning satisfactorily. *See Sawyer v. Colvin*, 512 F. App'x, 603, 611 (7th Cir.2013). However, in *Sawyer*, the court made that comment at step five in the context of analyzing the vocational expert's testimony. Here, it is unknown whether the ALJ found any mild limitations. If any limitations were found, then the ALJ was required to consider them in determining Plaintiff's RFC before step four. *See Craft*, 539 F. 3d at 676. Additionally, though the Commissioner asserts that even severe mental impairments may not require accommodation in an individual's RFC, the case the Commissioner cites to, *Griffeth v. Comm'r of Soc. Sec'y*, 217 F. App'x 425 (6th Cir. 2007), is both out of circuit and not selected for publication in the Federal Reporter. In contrast, precedential case law from the Seventh Circuit Court of Appeals requires ALJs to consider non-severe mental impairments in making RFC assessments. *Craft*, 539 F.3d at 676. When determining Plaintiff's RFC on remand, the ALJ is instructed to consider the effects of Plaintiff's mental impairments and the limitations Plaintiff has as a result of the impairments.

### C. Residual Functional Capacity

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential

evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC. Plaintiff asserts that the ALJ did not properly assess Plaintiff's pain allegations and related limitations and, consequently, the RFC does not adequately address these issues. The Court has already determined that the ALJ failed to build a logical bridge from the evidence to her conclusions regarding these symptoms. Because of the errors in the evaluation of Plaintiff's pain allegations, the RFC is undermined. Further, the ALJ noted that no physician had prescribed a cane or assistive device. Focus on the lack of a prescription is improper, as prescriptions are not needed for the use of assistive devices. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).

Given that Plaintiff testified that he used a crutch, the ALJ should have explained her decision to not include use of the crutch in the RFC.

Plaintiff also contends that the ALJ's finding that Plaintiff could perform a reduced range of light work is not supported by substantial evidence. Specifically, Plaintiff asserts that the medical opinions that the ALJ relied upon did not examine all of the evidence, that there is no evidence that Plaintiff can stoop or carry 20 pounds, and that the ALJ selectively relied on treatment notes that showed improvement without discussing notes that indicated ongoing issues.

On remand, correction of the errors identified earlier in this opinion may lead to a different RFC. Accordingly, in depth analysis of Plaintiff's asserted errors in the current RFC is not warranted here. On remand, the ALJ is directed to submit to medical scrutiny any new and potentially decisive medical evidence. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). Further, in determining Plaintiff's RFC—including his abilities to stoop and carry—the ALJ is reminded to consider all of the evidence, not just evidence that supports her findings. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)) ("An ALJ has the obligation to consider all relevant medial evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.")

## CONCLUSION

For these reasons, the Court **GRANTS** the relief sought in the Brief in Support of Plaintiff's Motion for Summary Judgment [DE 13], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 15th day of September, 2016.

15

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT